590 A.2d 812

**James ZUFALL, Clinton Baker and CNG Development Company, Petitioners,**

v.

**DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 15, 1991.

Decided April 23, 1991.

Petition for Allowance of Appeal Denied Oct. 17, 1991.

David C. Pohland, Cassidy, Kotjarapoglus & Pohland, P.C., Greensburg, with him, Joseph B. Policicchio, Somerset, for petitioners.

Patrick H. Bair, Asst. Counsel, Harrisburg, for respondent.

Before CRAIG, President Judge, and PELLEGRINI, J., and BARRY, Senior Judge.

## OPINION

BARRY, Senior Judge.

Clinton Baker and his wife, Dorothy Baker and James Zufall and his wife, Grace Zufall (petitioners) have petitioned this Court for review of an order of the Commonwealth's Board of Property (Board) which held that the Commonwealth of Pennsylvania is the rightful owner of oil and gas rights, the subject of this litigation. We vacate and remand.

The petitioners were the owners of a 206.5 acre tract of land in Somerset County in 1968 when the Commonwealth filed a declaration of taking which condemned the tract. The declaration of taking contained the following provision:

9. All existing public utility easements or rights of way, and all municipal streets, roads or highways, and all oil or gas rights, and deep veins of coal, and the mining rights associated therewith, of record in the records of Somerset County, Pennsylvania, are specifically excluded herefrom.

(Declaration of Taking, filed at No. 1101 C.D.1968, Somerset County.) A jury awarded the petitioners $90,000.00 in September of 1969. The Commonwealth eventually satisfied the judgment entered against it on the jury's award.

In 1979, the petitioners leased the oil and gas rights under the tract which had been condemned. Thereafter, the Commonwealth refused to permit that third party to drill for the oil and gas. The petitioners then filed an action in equity in Somerset County, seeking to enjoin the Commonwealth from asserting any ownership interest in the oil and gas rights and to declare that the petitioners were the rightful owners of those rights. At the Commonwealth's request, the matter was transferred to the Board[1] which entered an order dismissing the petitioners' action and holding that the oil and gas rights were owned by the Commonwealth. Petitioners sought review from this Court.

The petitioners assert that the Board erred in concluding that the Commonwealth had title to these oil and gas rights. The petitioners argue that they are the rightful owners of the interests in question. Their claim is based on a theory of equitable estoppel as a result of conduct of the Commonwealth's attorney at the trial on damages pursuant to the 1968 declaration of taking.

As already mentioned, the declaration of taking had a provision which excluded, inter alia, "oil or gas rights, and deep veins of coal, and the mining rights associated therewith, of record in the records of Somerset County" from the interest being condemned. At the time the declaration of taking was filed, there existed in the public records of Somerset County a recorded coal lease which was specifically reserved from the taking in that portion of the declara-

---

1. Section 1207 of the Administrative Code, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 337, grants the Board jurisdiction to hear disputes concerning the title to real property where the Commonwealth asserts an interest. The fact that petitioners improperly filed an equity action in the common pleas court does not divest the Board of its jurisdiction. *Pennsylvania Game Commission v. Bowman,* 81 Pa.Commonwealth Ct. 381, 474 A.2d 383 (1984).

tion describing the tract of land involved. The petitioners had leased the oil and gas rights to Peoples Natural Gas Company in 1959 and that lease was recorded; the lease was canceled in 1967, one year prior to the filing of the declaration.

At the trial of the eminent domain case, petitioner Clinton Baker was describing the land when he mentioned the oil and gas lease to Peoples Natural Gas. The following exchange then occurred:

BY MR. MATTHEWS [Commonwealth's attorney]: If the Court please, I wish at this time to move to strike from the record the testimony of Mr. Baker as to the oil and gas.

BY THE COURT: For what....

BY MR. MATTHEWS: Oil and gas.

BY THE COURT: You are premature, Mr. Matthews. The examination isn't finished. You might present the matter when it comes up for cross-examination. He is on chief.

BY MR. MATTHEWS: That is why I object.

BY THE COURT: What is your objection?

BY MR. MATTHEWS: *My objection is that paragraph 9 of the Declaration of Taking as recorded specifically exempts from taking any coal or oil or gas rights; therefore, we feel it isn't a part of any damages because none of that is taken.*

(Notes of testimony, 9/5/69, pp. 18–19.) (Emphasis added.) At the close of Mr. Baker's direct examination, Mr. Matthews renewed his objection.

BY MR. MATTHEWS: At this time I move the court that we strike from the record any testimony as to oil and gas for the reason that the Declaration of Taking, paragraph 9, specifically excludes and does not take any oil, gas, or deep veins of coal; neither does it take any public utility easement. The testimony, however, I believe is there are no utilities on this property, but there were utilities about a mile away. But there was testimony as to oil there, *which wasn't being taken at all.*

BY THE COURT: The motion is declined. The presence of minerals may have some effect on the value of the premises immediately before the taking. *The jury will understand, however, that in valuing the land there is no taking of the oil and gas, if any be there.*

(*Id.* at 21–22.) (Emphasis added.) Mr. Matthews then cross examined Mr. Baker as follows:

Q: But you do own the oil and gas, do you not?

A: I don't know.

Q: *You are familiar, are you not, that this declaration of taking specifically excluded and does not take any oil and gas, you are aware of that, are you not?*

A: Yes.

Q: Did you consider the value of the oil and gas in it when you said it was worth a hundred thousand dollars?

A: No.

Q: You didn't consider the oil and gas in that?

A: Right.

(*Id.* at 25–26.) (Emphasis added.) The petitioners argue that the Commonwealth should now be estopped from asserting any interest in the oil and gas rights because of the actions of its attorney at the eminent domain trial.

Although there had been a reluctance to apply the concept of estoppel against the government, it is now well accepted in this Commonwealth that the doctrine may be applied against the government in some situations. *Department of Public Welfare v. UEC, Inc.*, 483 Pa. 503, 397 A.2d 779 (1979); *Humphreys v. Cain*, 83 Pa.Commonwealth Ct. 176, 477 A.2d 32 (1984). As we have stated:

Equitable estoppel arises when someone by his acts, representations or admissions, or by his silence when he ought to speak out, either intentionally or through culpable negligence induces another to believe certain facts to exist and such other person rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. *Bearoff v. Bearoff Brothers, Inc.*, 458 Pa. 494, 327 A.2d 72 (1974).

294

In short, the two essential elements of equitable estoppel are an inducement, and a justifiable reliance on the inducement. *Novelty Knitting Mills, Inc. v. Siskind,* 500 Pa. 432, 457 A.2d 502 (1983). The party asserting the estoppel bears the burden of proving it by clear and convincing evidence. *Blofsen v. Cutaiar,* 460 Pa. 411, 333 A.2d 841 (1975).

*Bayush v. Workmen's Compensation Appeal Board (Conemaugh Township),* 111 Pa.Commonwealth Ct. 617, 624–25, 534 A.2d 853, 857 (1987).

 We believe the petitioners have met their heavy burden of proving estoppel. Their proof, which consists of the public record of a trial in an eminent domain case, showed that the attorney representing the Commonwealth on a number of occasions stated before the petitioners, the judge and the jury that the Commonwealth was not taking the petitioners' oil and gas rights associated with the tract condemned. Furthermore, while the petitioners testified about the value of stone and timber on the property in proving fair market value, they did not testify about the value of the oil and gas rights. Simply put, there was the necessary inducement and reliance to support a theory of equitable estoppel.

The Commonwealth first argues that the declaration of taking made clear that the oil and gas rights were being taken. It asserts that the exclusionary language contained in paragraph 9, quoted above, applied only to any lesser estates *which were recorded* at the time the declaration was filed. The Commonwealth points to the recorded coal lease which was specifically mentioned in the portion of the declaration of taking which described the tract being condemned. Because there were no *recorded* interests of oil and gas, the Commonwealth argues that the exclusionary provisions of paragraph 9 had no applicability to the oil and gas rights associated with this tract.

 The Commonwealth sets forth a number of reasons why it should not be estopped from asserting its ownership of the oil and gas rights. It first argues that petitioners

have waived the right to argue equitable estoppel. If the petitioners had any questions concerning the quantity of the estate taken, those questions, it is contended, should have been resolved by the filing of preliminary objections pursuant to Section 406 of the Eminent Domain Code of 1964, Act of June 22, 1964, P.L. 84, *as amended*, 26 P.S. § 1–406. At the time the petitioners reviewed the declaration of taking, they very well may have agreed that the Commonwealth had taken the entire estate but for the coal lease. Since there was no question concerning the quantity of the estate condemned, there was no need to file preliminary objections on that question. Petitioners could have been prepared to offer evidence concerning the value of the oil and gas so that the jury could consider those factors when awarding damages. A question concerning the quantity of the estate taken did not arise until the Commonwealth's attorney made the assertion at the trial that the oil and gas was not being taken. Under these circumstances, we are loath to find any waiver on the part of petitioners.

The Commonwealth next argues that the trial awarding damages has no relevance to the question of the quantity of the estate being condemned. Such an argument cannot be seriously questioned in almost all instances. The unique facts involved here, however, again require us to conclude that this principle does not matter in this case.

The Commonwealth next contends that petitioners have waived the right to argue equitable estoppel because they did not appeal the jury verdict. Initially, we must note that the petitioners were willing to accept the jury's award of $90,000. They testified at the trial that the fair market value of the land was $100,000.00. On cross-examination by the Commonwealth's attorney, Mr. Baker testified that the oil and gas rights were not considered. Petitioners believed that they still owned the rights in question and that there was no need to appeal that very question.

The Commonwealth's argument on another issue is more problematic. We refer to a portion of the trial court's charge to the jury in which the court stated:

> Counsel for the Commonwealth has asked us to include several points in the charge, which we are willing to do. I now read: 'The Court is respectfully requested to charge the jury as follows: Since this is a taking *of the whole property*, the measure of damage is the fair market value of the whole property at the time of the condemnation, September 24, 1968.' That is the important day. That is what you consider as a matter of the time; the point as stated is briefly the basic rule and we affirm it.

(Notes of testimony, p. 97.) (Emphasis added.) The Commonwealth argues that petitioners' failure to object to this portion of the charge precludes their present argument. We disagree for two reasons. First, our review of the record convinces us that the trial court, in affirming this requested point for charge, was not addressing the quantity of the estate taken but the principle that value is determined as of the date of the declaration of taking. Furthermore, while there may be some inconsistencies in the respective positions set forth at the trial, we believe that the equities involved require that any such problems must be resolved against the Commonwealth in light of the clear assertions made by the Commonwealth's attorney concerning the oil and gas rights.

The Commonwealth finally argues that its attorney did not have the authority to make these assertions at trial. This position is clearly in conflict with existing case law concerning the authority of a Commonwealth attorney during litigation. In *Department of Transportation v. Limestone Products & Supply Co.*, 72 Pa.Commonwealth Ct. 360, 456 A.2d 706 (1983), the Commonwealth attempted to repudiate a settlement agreement which its attorney had agreed to immediately prior to trial because the attorney allegedly lacked authority to settle the case. In rejecting the Commonwealth's argument, we stated:

> [W]hen a jury has been selected and is waiting in an eminent domain case, and the Commonwealth's attorney,

present and *functioning as an officer of the court*, then and there enters a settlement agreement after checking with departmental headquarters, we cannot permit the Commonwealth to repudiate that settlement on the basis that the Commonwealth's own attorney did not check far enough up in the official hierarchy. Practical experience with the time pressures involved in processing jury trials, particularly in a busy metropolitan county, establishes that a condemnee's attorney cannot possibly assume what is rightly the Commonwealth's burden—making sure that its own officials follow the internal procedures prescribed for them.

*Id.*, 72 Pa.Commonwealth Ct. at 363, 456 A.2d at 707–08. That principle is equally applicable here.

## ORDER

NOW, April 23, 1991, the order of the Board of Property, dated July 2, 1990, at No. BP–84–03, is vacated and the matter is remanded so that the Board of Property may enter an order declaring that the petitioners own the oil and gas rights involved in this case.

Jurisdiction relinquished.