In Re: Nomination Petition of Marie DeYOUNG as a Democrat for State Representative for the 163rd Legislative District

**Harry M. Riley, IV, Petitioner.**

Commonwealth Court of Pennsylvania.

Heard March 23, 2006.

Decided April 7, 2006.

Publication Ordered June 12, 2006.

Michael L. Maddren, Media, for petitioner.

Bruce H. Bikin, Philadelphia, for respondent.

OPINION BY Judge LEAVITT.

Before this Court is the petition of Harry M. Riley, IV, to set aside the nomination petition of Marie E. deYoung as a candidate for State Representative for the 163rd Legislative District. For the reasons set forth below, the Court dismisses Riley's petition.

DeYoung is seeking to have her name placed on the ballot for the 2006 primary election as a Democratic candidate for State Representative for the 163rd Legislative District. As required by Section 1104(b) of the Public Official and Employee Ethics Act (Ethics Act), 65 Pa.C.S. § 1104(b), deYoung attached a Statement of Financial Interests (Financial Statement) to her nominating petition. On line 6 of the Financial Statement, deYoung indicated that her "Occupation or Profession" is "community minister, writer, consultant." On line 10, which requires a prospective candidate to list "Direct or Indirect Sources of Income," deYoung wrote "Self-employed: Marie deYoung/community minister, writer, consultant."

Riley, a registered Democrat and qualified elector of the 163rd District, has challenged deYoung's nomination petition. Riley seeks to prevent deYoung from appearing on the ballot because he asserts that her response on line 10 is insufficient. Specifically, Riley contends that deYoung's entry thereon failed to disclose the persons who made payments to deYoung for her community ministering, writing or consulting in 2005. DeYoung concedes that in the course of her self-employment in 2005, one of the payments she received was for $2,000, which exceeds the $1,300 threshold identified on the instructions for

filling out a Financial Statement.[1] Riley argues that this single payment was required to be disclosed, and it was not. Thus, her nomination petition must be stricken.

DeYoung counters that she is the only "source" of her income, and that fact was fully disclosed on the Financial Statement. There is no requirement, she asserts, that she also identify each individual client. She contends that it is clear from the face of her Financial Statement that her income was derived from the activities listed on line 6 as her occupation. Thus, she has complied with the Ethics Act. DeYoung further contends that if she were required to identify all those who engaged her services, this is an amendable defect. *In re Benninghoff,* 578 Pa. 402, 852 A.2d 1182 (2004).

Riley rejoins that the defect is not amendable. Because the Election Code requires strict enforcement, a Financial Statement filed in conjunction with a nomination petition is likewise subject to a narrow and strict enforcement standard. This precludes deYoung from amending

her Financial Statement. Riley further asserts that a Financial Statement filed by a candidate is subject to a higher, or stricter, standard of compliance than one filed in any other context in which it is required by the Ethics Act.

Following a hearing on this matter on March 23, 2006, the Court determined that the State Ethics Commission (Ethics Commission) had primary jurisdiction to decide, *inter alia,* whether deYoung's response on line 10 of the Financial Statement was insufficient and, if so, whether it constituted an amendable or fatal defect.[2] Accordingly, the Court transferred this matter to the Ethics Commission for an expedited decision and retained jurisdiction.[3] The Commission's decision followed in the form of an "Opinion of the Commission" dated March 30, 2006.

The Ethics Commission reviewed the record forwarded by this Court as well as briefs submitted by the parties to the Commission. The Commission found that, pursuant to Section 1105(b)(5) of the Ethics Act, 65 Pa.C.S. § 1105(b),[4] it was insuf-

1. This payment was the only one to exceed $1,300.

2. Specifically, the Court asked the Ethics Commission to consider the following issues:
   (1) Whether a person has properly completed a Statement of Financial Interests by identifying the direct and indirect source of income as self-employment as a writer, minister and community activist or whether that person must also identify each customer, client or parishioner?
   (2) Whether deYoung's response on line 10, if insufficient, constitutes an amendable or fatal defect?
   (3) In determining whether a Statement of Financial Interests complies with the Ethics Act, and whether a defect is amendable, should a more stringent standard be applied to statements filed in conjunction with nomination petitions as opposed to statements filed for other purposes?

3. In doing so, the Court followed the procedure of the Pennsylvania Supreme Court in

*Benninghoff.* In *Benninghoff,* which also involved a challenge to a candidate's Financial Statement, the Supreme Court transferred the matter to the Ethics Commission to render a disposition as to whether the candidate's omission of certain sources of income constituted an amendable or fatal defect. The Supreme Court retained jurisdiction and, at the same time, expressly declined to decide whether the Ethics Commission had primary jurisdiction over the substantive issue. *Benninghoff,* 578 Pa. at 407, 852 A.2d at 1185, n. 4 (2004).

4. It provides:
   (b) Required information.—The statement shall include the following information for the prior calendar year with regard to the person required to file the statement:
   * * *
   (5) The name and address of any direct or indirect source of income totaling in the aggregate $1,300 or more. However,

ficient for deYoung merely to disclose her self-employment as a source of income. In order for a self-employed individual to satisfy the disclosure requirements of Section 1105(b)(5), she must identify each customer, client or other non-confidential source of income greater than $1,300. The Commission further found that while an amendment to deYoung's Financial Statement was generally permissible, it was still a fatal defect because the applicable filing deadline for nomination petitions had already passed, and because the failure to identify the single reportable source of income over $1,300 was not a defect readily apparent from the face of the document. *Benninghoff.*

Upon consideration of the Ethics Commission's opinion, the Court entered an order on March 31, 2006, granting leave to the Commission to intervene in the instant action. The Commission declined to do so, stating in a letter filed with the Prothonotary of this Court that:

> The Commissioners are appreciative of the opportunity to intervene. However, the Commission's Opinion that was issued and filed in this matter definitively sets forth the Commission's views on the issues raised by the Court. The Commission's policy is to avoid any potential appearance of partisanship as to candidates; therefore, the Commission will not be intervening in this matter.

Letter from Louis W. Flyman, Chair, State Ethics Commission, to Daniel R. Schuckers, Prothonotary, filed April 3, 2006.

The Ethics Commission's refusal to intervene on grounds of "partisanship" makes no sense. First, this position is inconsistent with its prior conduct, where it has initiated enforcement actions against candidates who had failed to file a Financial Statement. *See State Ethics Commission v. Baldwin,* 498 Pa. 255, 445 A.2d 1208 (1982); *State Ethics Commission v. Landauer,* 91 Pa.Cmwlth. 70, 496 A.2d 862 (1985).[5] Second, the Ethics Commission is the agency charged with enforcement of the Ethics Act, and it cannot disavow its statutory duty on grounds of "partisanship," whatever that means.

This case raises an important issue that has heretofore either been ignored or overlooked by our appellate courts. That is, who has standing to initiate, and prosecute, an action under the Ethics Act to strike a candidate's nomination petition based upon an allegedly deficient Financial Statement? For the reasons set forth below, the Court finds that because the Ethics Act did not create a private right of

---

this provision shall not be construed to require the divulgence of confidential information protected by statute or existing professional codes of ethics or common law privileges.

65 Pa.C.S. § 1105(b)(5).

**5.** In *Landauer,* the Ethics Commission petitioned this Court to have several individuals declared ineligible as winners in a primary election since they had failed to timely file Financial Statements with the Commission. This Court granted the Commission's petition. In *Baldwin,* the Ethics Commission challenged the nomination petitions of thirteen candidates for the General Assembly who had failed to file their Financial Statements with

the Commission on or before the filing deadline. The Supreme Court found that this was not a fatal defect since the required information was subsequently received and was otherwise available for the purposes envisioned by the Ethics Act. The Court recognizes that our legislature amended the Ethics Act in 1989, largely in response to *Baldwin,* to provide that a candidate's failure to file a Financial Statement in accordance with the requirements in the Ethics Act *"shall ... be a fatal defect."* Section 1104(b)(3) of the Ethics Act, 65 Pa.C.S. § 1104(b)(3) (emphasis added). The legislature did not, however, alter the Ethics Commission's authority to enforce its enabling act.

action, Riley lacked standing to lodge his challenge and, accordingly, his petition to set aside deYoung's nomination petition will be dismissed. Because the Ethics Commission, the agency created to seek removal of deYoung from the primary election ballot, has opted not to pursue that sanction, the Court will order deYoung's name to be placed on the ballot.

■ Preliminarily, the Court recognizes that the question of standing is generally not a jurisdictional issue and, therefore, it may not be raised *sua sponte*. *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 554 Pa. 249, 256 n. 6, 721 A.2d 43, 46 n. 6 (1998). However, where a statute creates a cause of action and designates who may bring an action, the issue of standing is interwoven with that of subject matter jurisdiction and becomes a jurisdictional prerequisite to an action. *Beverly Healthcare–Murrysville v. Department of Public Welfare*, 828 A.2d 491, 496 (Pa.Cmwlth.2003). The Court finds that, with respect to the Ethics Act, standing is a jurisdictional issue.

■ When it enacted the Ethics Act, our General Assembly recognized that "the people have a right to be assured that the financial interests of ... candidates for public office do not conflict with the public trust." Section 1101.1(a) of the Ethics Act, 65 Pa.C.S. § 1101.1(a). The legislature also recognized that public officials should not be discouraged from maintaining their contacts with their communities through their occupations and professions. Section 1101.1(b) of the Ethics Act, 65 Pa.C.S. § 1101.1(b). The purpose of the Ethics Act, then, is to reconcile these potentially conflicting interests by proscribing certain conduct and requiring candidates (and elected officials) to file financial disclosure statements for public inspection.

■ The legislature further provided that, "in order to foster maximum compliance with its terms, this [Act] shall be administered in a manner that emphasizes guidance to public officials and public employees regarding the ethical standards established by this [Act]." Section 1101.1(b) of the Ethics Act, 65 Pa.C.S. § 1101.1(b). Significantly, the legislature continued that

[i]t is the intent of the General Assembly that this [Act] be *administered by an independent commission* composed of members who are cognizant of the responsibilities and burdens of public officials and employees and who have demonstrated an interest in promoting public confidence in government.

Section 1101.1(c) of the Ethics Act, 65 Pa.C.S. § 1101.1(c) (emphasis added). There can be no doubt that the legislature intended to vest the Ethics Commission with authority to administer, and enforce, the Ethics Act.

In the case *sub judice*, deYoung is a prospective candidate for State Representative in the General Assembly. She is therefore subject to the following provisions in the Ethics Act:

Any candidate for a State-level public office shall file a statement of financial interests for the preceding calendar year with the commission on or before the last day for filing a petition to appear on the ballot for election. A copy of the statement of financial interests shall also be appended to such petition.

Section 1104(b)(1) of the Ethics Act, 65 Pa.C.S. § 1104(b)(1). The Ethics Act forbids the election official, in this case the Secretary of State, from accepting a nominating petition that lacks a copy of the Financial Statement:

(3) No petition to appear on the ballot for election shall be accepted by the respective State ... election officials unless the petition has appended

thereto a statement of financial interests as set forth in paragraph[ ](1).... Failure to file the statement in accordance with the provisions of this chapter shall, in addition to any other penalties provided, be a fatal defect to a petition to appear on the ballot.

65 Pa.C.S. § 1104(b)(3).

■ The legislative intent in Section 1104(b)(3) is clear: the Secretary of State's role is limited to determining whether a candidate has physically *filed* a copy of the Financial Statement with her nomination petition. The Legislature did not direct the Secretary to inspect the *content* of that statement and examine it for deficiencies. That responsibility has been assigned to the Ethics Commission, the agency charged with enforcement of the Ethics Act.

The Ethics Commission's exclusive authority to review the contents of Financial Statements for deficiencies is found in Section 1107(5) of the Ethics Act. It provides:

In addition to other powers and duties prescribed by law, the commission *shall:*

\* \* \*

(5) *Inspect statements of financial interests* which have been filed *in order to ascertain whether any reporting person has failed to file such a statement or has filed a deficient statement.* If, upon inspection, it is determined that a reporting person has failed to file a statement of financial interests or that any statement which has been filed fails to conform with the requirements of section 1105 (relating to statement of financial interests), then the commission shall in writing notify the person. Such notice shall state in detail the deficiency and the penalties for failure to file or for filing a deficient statement of financial interests.

65 Pa.C.S. § 1107(5) (emphasis added). The implementing regulation at 51 Pa. Code § 19.3 [6] further explains how the

6. It provides:

19.3. *Late or deficient filings.*

(a)If an audit or inspection determines that a required filing is deficient or that a required filing has not been made, *the Commission will provide written notice to the individual required to file, detailing the deficiency and the penalties for deficient filing or failure to file.*

(b) *If a complaint is received alleging that a required filing is deficient or has not been made, the Commission may elect to proceed in the matter under this section* rather than through the investigative procedures of Chapter 21 (relating to investigations).

(1)Upon election, the complainant will be notified of the decision as well as the final resolution of the matter.

(2)In determining whether to proceed under this section, the Commission may consider whether:

(i)The deficient filing or failure to file was intentional.

(ii)The filer had prior notice of the requirements of the act.

(iii)The filer has in the past complied with the act.

(c)The individual notified in accordance with subsection (a) has 20 days from the mailing date of the notice to correct deficiencies or to file a Statement of Financial Interests. *If an individual fails to file or to correct his statement within that time, the Commission will review the matter to determine whether a civil penalty is appropriate under the act.*

(d)If the Commission determines that a penalty is appropriate, it will issue a rule to show cause, notifying the individual of his deficiency under the act and of the grounds for the rule and of his opportunity to respond in writing to the rule. If cause is not shown, the rule and penalty therein become absolute.

(e)The Commission may assess a penalty of not more than $25 per day for the time a Statement of Financial Interests remains delinquent up to a maximum of $250 total.

(f) *The penalty in subsection (d) is in addition to other penalties provided by law* and the filing of a Statement of Financial Interests in accordance with subsection (a) does not

Ethics Commission is to handle deficient Financial Statements. If the Ethics Commission finds a deficiency in the course of an audit, it must offer the filer an opportunity to amend it. On the other hand, if the Ethics Commission discovers the deficiency as a result of a complaint lodged by a member of the public, then the Ethics Commission has the discretion to proceed under 51 Pa.Code § 19.3(b) to institute an immediate enforcement action. In deciding whether to exercise this prosecutorial discretion, the Ethics Commission considers, *inter alia,* whether the deficiency was intentional. Alternatively, the Ethics Commission may employ the "procedures of Chapter 21" [7] to address a deficiency in a Financial Statement identified by a private complainant. 51 Pa.Code §§ 21.1–21.30.

█ As the above discussion makes clear, our legislature has vested exclusive authority in the Ethics Commission to enforce the Ethics Act. Riley should have presented his concern about deYoung's Financial Statement directly to the Ethics Commission, which then could have pursued one of several courses, including the filing of an action with this Court to have deYoung removed from the ballot. Nowhere does the statute create a private right of action like that asserted by Riley in this case, and our appellate courts have consistently held that where the General Assembly commits the enforcement of a regulatory statute to a government body or official, this precludes enforcement by private individuals. *See, e.g., D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Co.,* 494 Pa. 501, 431 A.2d 966 (1981) (wherein the Supreme Court held that because the Unfair Insurance Practices Act provided for enforcement by the Insurance Commissioner there was no private right of action); *Quirk v. Schuylkill County Municipal Authority,* 54 Pa. Cmwlth. 619, 422 A.2d 904 (1980) (wherein this Court held that where the legislature committed enforcement of a statute to "the Commonwealth" private persons had no right of action).[8]

█ In sum, it was incumbent upon the Ethics Commission to pursue an appropriate sanction if it believes deYoung violated the Ethics Act, which could range from a fine to an action in this Court's original jurisdiction to remove deYoung from the ballot. The Ethics Commission, by declining to intervene in this matter, has chosen not to exercise its statutory authority. The Court takes no position on the Commission's decision, since an agency's exercise of prosecutorial discretion is not subject to judicial review. *In re Frawley,* 26 Pa.Cmwlth. 517, 364 A.2d 748 (1976). *See also Heckler v. Chaney,* 470 U.S. 821, 831, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985) (an administrative agency must be able to assess whether a violation has

---

otherwise vitiate the failure to comply with the act.

51 Pa.Code § 19.3 (emphasis added).

7. Chapter 21, at 51 Pa.Code §§ 21.1–21.30, establishes a procedure for confidential investigations, hearings and the issuance of different administrative orders, each appropriate to address the violation. Penalties available to the Ethics Commission include ordering restitution, issuing a cease-and-desist order, ordering corrective action or referring the matter to other law enforcement agencies. 51 Pa.Code § 21.30.

8. This is not to say that private rights of action are never allowed under a regulatory statute. The legislature may expressly provide for citizen-suits within a regulatory scheme. *See, e.g.,* Section 505(a), (g) of the Clean Water Act, 33 U.S.C. §§ 1365(a), (g) (providing that a suit to enforce any limitation in a National Pollutant Discharge Elimination System (NPDES) permit may be brought by any "citizen," defined as "a person or persons having an interest which is or may be adversely affected.").

occurred and whether its resources are best spent on a particular enforcement action as opposed to another). A private citizen such as Riley may not act as a private attorney general and pursue such sanctions on behalf of the Ethics Commission.[9]

In accordance with the foregoing, the objection petition of Harry M. Riley, IV, is dismissed for lack of standing. Marie deYoung will be permitted to remain on the primary election ballot as a Democratic candidate for State Representative for the 163rd Legislative District.

## ORDER

AND NOW, this 7th day of April, 2006, the petition of Harry M. Riley, IV, to set aside the nomination petition of Marie E. deYoung as a candidate for State Representative for the 163rd Legislative District in the 2006 primary election is hereby DISMISSED. It is further ORDERED that Marie E. deYoung's name be placed on the primary election ballot.

---

9. The Court notes that Riley lacks standing under the traditional standard requiring a litigant to be an aggrieved party. To be considered "aggrieved," a party must have a "substantial, direct and immediate interest in the claim sought to be litigated." *Hospital & Healthsystem Association of Pennsylvania v. Department of Public Welfare*, 585 Pa. 106, 888 A.2d 601, 607 (2005). A "substantial" interest is "an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law." *Id.* (quoting *South Whitehall Township Police Service v. South Whitehall Township*, 521 Pa. 82, 86, 555 A.2d 793, 795 (1989)). The Court fails to see how Riley's interest in striking deYoung's nomination petition surpasses that of all of the citizens in the 163rd Legislative District. This is especially true where standing has been conferred by statute on the Ethics Commission. As this Court noted in *dicta* in *Landauer*, the voters' interests are represented in these types of cases by the Commission. *Landauer*, 496 A.2d at 865. *See also Baldwin*, 498 Pa. at 259 n. 4, 445 A.2d at 1210, n. 4 ("We agree with the Commonwealth Court that the power to bring this suit fell within the implicit authority conferred to permit [the Ethics Commission] to carry out the stated purposes of the Ethics Act.").