597 A.2d 1146

COMMONWEALTH of Pennsylvania,
STATE ETHICS COMMISSION

v.

Albert J. CRESSON; Robert R. Smith; Paul Vawryk; W.J. Mike Gretowski; Carl L. Gordner; Geraldine T. Dirner; Garnett L. Rainey; Gary S. Milliken; Thomas J. Dzambo; Darwin K. Luther; Loren R. Disque; Theodore Rizzo; John J. Fiorina; John E. Gera; Michael A. Gianetta; Vincent E. Byrne; William D. Ollendyke; John J. Lewis; Jason Kravitz; Stephen W. Metcalfe; Ronald D'Alfonso; Robert Copson, Sr.; George I. Trout; Susan E. Huie; Dorothy R. Smith.

Petition of Albert J. CRESSON, Garnett L. Rainey and John J. Fiorina.

Supreme Court of Pennsylvania.

Argued May 6, 1991.

Decided Oct. 10, 1991.

Charles M. Means, Markel Schafer & Means, P.C., Pittsburgh, for petitioners.

Robin Hittie, Harrisburg, for State Ethics Comn.

Walter A. Bunt, Pittsburgh, for Gary A. Milliken.

Todd J. O'Malley, Scranton, for Giannetta, Byrne, Ollendyke & Lewis.

James M. McMaster, Newton, for Kravitz, Metcalfe, D'Alfonso, & Copson.

George O. Wagner, Danville, for Carl L. Gordner.

Mark S. Fisher, Allentown, for Susan E. Huie, and Dorothy Smith.

Anna Marie Sossong, Harrisburg, for Geraldine T. Dirner.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

McDERMOTT, Justice.

On April 17, 1991, the State Ethics Commission ("Commission") challenged in Commonwealth Court the nomina-

tion petitions of twenty-five (25) prospective candidates [1] who were seeking nomination for various municipal offices in the May 21, 1991, primary election. The Commission's petition to set aside the nomination petitions was predicated on the candidates' alleged failure to file Statements of Financial Interests as required by The Public Official and Employee Ethics Act ("Ethics Act").[2] The Ethics Act required these statements to be filed with the governing authorities of the political subdivisions in which they were candidates on or before the last day for filing nomination petitions.[3] The last day for filing nomination petitions in this primary election was March 12, 1991.

1. The prospective candidates and the respective office they sought were: Albert J. Cresson, candidate for Derry Borough council member, Westmoreland County; Robert R. Smith, candidate for Greene Township supervisor, Erie County; Paul Vawryk, candidate for Borough of Brackenridge council member, Allegheny County; W.J. Mike Gretowski, candidate for Stroud Township supervisor, Monroe County; Carl L. Gordner, candidate for Pine Township supervisor, Columbia County; Geraldine T. Dirner, Borough of Ashley council member, Luzerne County; Garnett L. Rainey, Borough of Derry council member, Westmoreland County; Gary S. Milliken, North Hills School District school director, Allegheny County; Thomas J. Dzambo, Southmoreland School District school director, Westmoreland County; Darwin K. Luther, Ligonier Township auditor, Westmoreland County; Loren R. Disque, Dickinson Township auditor, Cumberland County; Theodore Rizzo, Bensalem Township School District school director, Bucks County; John J. Fiorina, Derry Township auditor, Westmoreland County; John E. Gera, Greater Latrobe School District school director, Westmoreland County; Michael A. Gianetta, Scott Township supervisor, Lackawanna County; Vincent E. Byrne, Scott Township auditor, Lackawanna County; William D. Ollendyke, Scott Township supervisor, Lackawanna County; John J. Lewis, Scott Township auditor, Lackawanna County; Jason Kravitz, Bensalem Township School District school director, Bucks County; Stephen W. Metcalfe, Bensalem Township School District school director, Bucks County; Ronald D'Alfonso, Bensalem Township School District school director, Bucks County; Robert Copson, Sr., Bensalem Township constable, Bucks County; George I. Trout, Greater Latrobe School District school director, Westmoreland County; Susan E. Huie, East Penn School District school director, Lehigh County; and Dorothy R. Smith, East Penn School District school director, Lehigh County.

2. Act of October 4, 1978, P.L. 883, No. 170, § 1, *as reenacted and amended* by Act of June 26, 1989, P.L. 26, No. 9, § 1, 65 P.S. §§ 401–413.

3. 65 P.S. § 404(b)(2).

On April 18, 1991, the Commonwealth Court entered an order setting a hearing date for May 7, 1991, on the Commission's petition. On April 29, 1991, candidates Cresson, Rainey and Fiorina [4] filed applications for extraordinary relief and stay of the Commonwealth Court's order with this Court. On May 1, 1991, this Court granted the applications and listed the case for argument before this Court for May 6, 1991. Following arguments, we entered a per curiam order on May 10, 1991, affirming our previous order granting extraordinary relief, thereby permitting the candidates' names to appear on the ballot. We also noted that an opinion would follow. 527 Pa. 209, 589 A.2d 1388 (1991).

The first issue before us in this appeal is whether the Commission timely filed their petition to set aside the nomination petitions of the candidates with the Commonwealth Court.

Section 977 of our Election Code [5] provides, in relevant part, as follows:

All nomination petitions and papers received and filed within the periods limited by this act shall be deemed to be valid, *unless, within seven days after the last day for filing said nomination petition or paper*, a petition is presented to the court specifically setting forth the objections thereto, and praying that the said petition or paper be set aside.

25 P.S. § 2937 (emphasis added).

Recently, in analyzing this section of the Election Code, we reaffirmed our long-standing determination that the time limit prescribed by section 977 for challenging nomination petitions and papers is mandatory. *In re Acosta*, 525 Pa. 135, 578 A.2d 407 (1990); *In re Lee*, 525 Pa. 155, 578

4. The following individuals elected to join in the applications for emergency relief and stay: Candidates Trout, Dzambo, Vawryk, Kravitz, Metcalfe, D'Alfonso, Copson and Milliken. In addition, several candidates filed separate answers and responses to the Commission's petition to set aside.

5. Act of June 3, 1937, P.L. 1333, art. I, § 101, *as amended*, 25 P.S. § 2601 *et seq.*

A.2d 1277 (1990). *See also, American Labor Party Case,* 352 Pa. 576, 44 A.2d 48 (1945).

In the instant case the Commission filed its petition to set aside on April 17, 1991, nearly one month after the last day for taking such action. The Commission urges that section 977 of the Election Code has no application here. Instead, the Commission argues that its action was brought under the Ethics Act for a violation of the same, and thus it (the Commission) is not subject to the filing requirements of the Election Code.

In support of its position, the Commission relies in part on our decision in *Abraham v. Shapp,* 484 Pa. 573, 400 A.2d 1249 (1979), as authority for the proposition that its action is not subject to the filing periods under the Election Code. Reliance on this case, however, is misplaced. In *Abraham,* a case concerning a challenge to a declaration for candidacy for retention election to the Commonwealth Court of an executive appointee pursuant to the Judicial Code, 42 Pa. C.S. § 3131, we held, *inter alia,* that the petition to challenge was not subject to the filing periods under the Election Code since the challenge there was contesting the filing of judicial retention papers and the filing of such papers was governed by Article 5, § 15(b) of the Pennsylvania Constitution and by the Judicial Code, 42 Pa.C.S. § 3153. Therefore, we held that the Election Code provisions were not applicable.

█ In the instant case, however, the nomination petitions and papers filed by the candidates were filed pursuant to the Election Code itself. Since the actual document the Commission seeks to attack, i.e., the nomination petition, is a creation of the Election Code, the specific time limit imposed by the Code for objecting to such petitions must also apply.

█ The Commission further argues that the Ethics Act should be construed as pre-empting the Election Code by virtue of the following provision contained within the Ethics Act:

If the provisions of this act conflict with any other statute, ordinance, regulation or rule, the provisions of this act shall control.

65 P.S. § 412. Moreover, the Commission contends that since the Ethics Act was promulgated after the Election Code, the Ethics Act would govern any conflict related to time periods for filing challenges to nominating petitions. These arguments are meritless. The Ethics Act is silent on when a petition to set aside must be filed. There is, therefore, no conflict. Since aspects of these statutes relate to the same subject matter, i.e., requirements for filing of nomination petitions, they are in *pari materia* and must be construed together. 1 Pa.C.S. § 1932.[6] Therefore, in light of the expressed time limit contained within the provision of the Election Code with respect to challenging nomination petitions, and the absence of a temporal framework in the Ethics Act, there is no conflict and the Election Code must apply.

Nearly forty years ago, this Court stressed the importance of time limits as prescribed in the Election Code. In *Turtzo v. Boyer*, 370 Pa. 526, 88 A.2d 884 (1952), Mr. Justice Musmanno aptly noted:

It is because the lawmakers of the State were aware of the inertia inherent in an unestimated percentage of the population, and the great harm which can be visited upon others because of that inertia, that it categorically established time limits for the various procedures required in the operation of the Pennsylvania Election Code. Unless time limits were set within which to challenge the results of elections, government would permanently sit on a shaky foundation, and the citizenry would never be certain of the identity of the office-holder chosen to direct and operate the complex activities of State, County and Municipality. Civilization must protect itself from the sluggard, as well as from the evildoer. The lazy railroad watchman, who fails to lower a safety gate in time, can

6. Act of December 6, 1972, P.L. 1339, No. 290, § 3.

inflict as much harm on innocent passengers as the bandit who holds up the train.

*Turtzo,* 370 Pa. at 531, 88 A.2d at 886.

Until our General Assembly expressly prescribes a different time period within which to challenge a nomination petition, we deem it only appropriate that the Commission must follow the same rules that are required by each and every candidate for public office. This is, of course, precisely what the Commission expects of the candidates.

Accordingly, the Application for Extraordinary Relief was granted.[7]

---

7. In addition to requesting that the Commission's petition to set aside be dismissed, the candidates in their Application for Extraordinary Relief sought to have this Court declare those provisions of the Ethics Act affecting the conduct of elections void. Our resolution of the above discussed issue makes it unnecessary to address this latter issue.